Good afternoon, your honors. May it please the court. Mr. Whitley requests that this court vacate a sentence and remand the matter for a sentence that complies with the terms of the plea agreement. Although this court uses a two-step process in reviewing the reasonableness of a sentence, it's the second step, the substantive reasonableness step, that's the key to this case, this court must look at the totality of the circumstances and determine the reasonableness of the 120-month sentence. The most significant circumstance in this case is the fact that the court accepted a plea agreement, entered into between Mr. Whitley and the government, but did not comply with its terms. It wasn't a binding plea agreement under Rule 11, was it? I believe it was, your honor. Now, admittedly, looking back at it, it's confusing how it's over the record. When I look at the plea agreement, it says, paragraph 5, which is the key to this case, is the parties agree to the following positions as to the below-listed sentencing factors only, which are not binding on the court in its application of the advisory guideline in range. But when you look at Rule 11, under Rule 11C, 1A, B, and C, the two binding ones are A and C, correct? C. So, A is that the government will not bring or will move to dismiss other charges. Clearly, they did that, they dismissed other charges. B is that the government will not bring or move to dismiss other charges. And that's not here. There's no recommendation or an agreement not to oppose any defendant's request. And C is that they agree that a specific sentence or sentencing range is appropriate disposition on the case. And that isn't what you agreed to, is it? It is essentially what we agreed to because it's the dispositive sentencing factors are what we agreed on, which... That's different than agreeing to the sentence. Correct. There's no number as far... We didn't say that it's got to be between. It's not a Rule C settlement. I mean, a plea agreement if you don't agree to a specific sentence. It's one thing to say, well, we agree not to oppose what the sentencing, what the result of these factors comes out to be. We agree to the offense level. Unless the judge is bound under Rule C, the judge can reject those out of hand upon a finding that he or she is doing that. But I don't think so in this case. It's not a matter of in this case. It's what the rule says. I'm sorry, but that's what I'm asking. I didn't ask, didn't make my question clear. Sorry. Can you ask again? Under the law, the rules, the only time the judge is bound is if a specific sentence is in Rule 11. Isn't that right? Right. A specific sentence or a sentencing range. And I think that in this case, under the terms of the plea, we did get to a specific range. Because the only factors that come into play in this case were all agreed upon. I need to look at the plea agreement. I don't see your brief as raising that issue at all. You're right, Your Honor. It's not what you're arguing isn't in your brief, is it? No, Your Honor, it's not. It's the first time I've heard that. That's correct, Your Honor. This is new. After reviewing the case more, this is something that I've found. Did you alert counsel on the other side that you found this new enlightenment? I did not, Your Honor. You're aware of procedures about those kind of things, aren't you? I was not aware that I needed to alert them about that. Well, you don't know them. If you don't brief those things, then you can't just bring them here for the first time as an argument. Well, what I thought it went towards is that the sentence wasn't substantively reasonable. It's just I'm adding it's in addition to why it's not substantively reasonable. I'm not saying it's... You're saying this is not a new argument, really? Correct. Correct. It goes towards the substantive reasonableness. Do you have the plea agreement? I do, Your Honor. May I approach? Would somebody hand it up here? I'd like to see it because I must have left it back at the office. I don't remember it being what you're saying. Go ahead with your argument while I read. Yes, Your Honor. As I was saying, the most significant circumstance is the fact that the court accepted the agreement entered into between Mr. Whitley and the government, but did not comply with its terms. In paragraph five of the plea agreement, the parties specifically agreed on the sentencing factors that were determinative of the appropriate guideline range. That's an 18-level adjustment for a loss between $2.5 and $7 million. That is a two-level increase for between 10 and 50 percent adjustment for acceptance of responsibility. None of the other factors come into play under it. Excuse me. Paragraph five says the parties agreed to the following positions as to the below listed sentencing factors only, which are not binding on the court in its application of the advisory guideline range, provided that if defendant's conduct prior to sentencing changes the circumstances with respect to any such factors, the United States is no Then you agree to an 18-level adjustment under the loss provision, and two levels under the number of victims provision, and a downward level for acceptance of responsibility. Now, that's just a classic plea agreement where the parties recommend a sentence to the judge and agree that they're not going to argue about what the levels are, but it doesn't bind the judge under Rule 11C, does it? But Mr. Whitley's argument would be that it has to be, under Rule 11C, one, it's got to be A, B, or C, and it's not B. I think it goes more towards C, which is something that binds the court, because it's certainly not a recommendation or agreement not to oppose the defendant's request. But you're arguing then something far different than whether it is a reasonably, substantively reasonable sentence. You're arguing it's a binding agreement under 1C, and in order to agree to that, we have to make a ruling, an interpretation of the rules against this plea agreement. Do you agree with that? That's certainly a factor, I think. I think it's a factor. I think that Mr. Whitley agreed to this paragraph 5. The inducement in agreeing to this plea agreement was paragraph 5, and the government's inducement in offering it was that Mr. Whitley, he pled early and that they could save their resources and focus on other crimes, as they argued at the sentencing. And the court had a chance at the Rule 11 hearing, the court said, we conditionally agree to this. And then at sentencing, the court accepted the plea agreement. They had the opportunity to reject it, and I don't understand why they would accept it and then not abide by the terms of the plea. But the court accepted the plea agreement, they acknowledged the 57, or it acknowledged the 57 to 71 month guideline range, and both parties argued for a sentence within the range. And the court, sui sponte and without any kind of notice, sentenced Mr. Whitley to 120 months. Is it your view that there has to be notice of a variant sentence? No, there does not. You're correct, Your Honor. But I think the sentence is particularly troubling because the plea agreement is the backbone of the federal criminal system. And the vast majority of federal cases are disposed of by plea agreement, and the parties and the court have a vital interest in assuring that these plea agreements are adhered to. For the court to accept a plea agreement but not comply with the terms of the plea agreement, it sets a bad precedent. And the incentive to enter into such a plea agreement essentially goes away. And quite frankly, the whole system would be in jeopardy of collapsing if the judges aren't going to accept a plea agreement and then go back and not comply with its terms. Do you have any evidence of that given the fact that they've been doing it for as long as these rules have been in effect? No, I don't have any evidence. It hasn't collapsed yet, has it? No, Your Honor, you're correct. But that's why I think, well, I think it's bad public policy. I think that it certainly doesn't promote the perception of fair sentencing, and worse, it causes unwarranted disparities. And I think when you look at the totality of these things, that the district court did abuse its discretion when it sentenced Mr. Whitley to 120 months. If there's no other questions, I'll reserve my time. Are you abandoning your argument, ground of appeal, that the district court erred by not announcing whether she was departing or varying? Yes, after reviewing the Erisary case, I hope I'm saying that right, I am abandoning that theory, Your Honor. And why does that case bring you to that conclusion? Because the case said that the judge doesn't have to give notice of a departure, or a variance. And I think clearly in the judge's statement of reasons, this is a variance. And so I don't think the judge had to say anything as far as notice, or even call it a variance. So the amendment to 741, do you think, since our 4th Circuit precedent, would have no impact on the argument at all? Can you say again? Well, you can argue the case, I guess, or abandon it, which you please, but I was just wondering, so you don't think that the amendments that have occurred since our precedent in the 4th Circuit bring some of that in question as to what you have to do, and whether you have to vary or depart? Do you think it's totally interchangeable, doesn't make any difference? Well, I think in my client's case, it doesn't make the difference as far as, it's not going to do my client any good if we go back and the judge just says, okay, well this is a variance, and this is why I'm doing it, and explains it. And that's why I'm abandoning it. Which do you think gives your client or any defendant being sentenced more protection, a departure or variance, in terms of opposing it? Which gives them greater protection? I think a departure gives more protection. Right, because under the guidelines, there's some structure, there's some guidance, right? Variance, 3553, you say, well, I looked at them and this is what I think is right. Then you're left to basically substantive reasonableness, aren't you? Yes, Your Honor. But you don't think there's any argument at all in terms of that, that, go ahead. No, I do think so. I think that the judge should have said, whether it was a departure or a variance or what, so that we could have, today, we could look at the case and see if it's reasonable and say, why did she depart or vary? And in this case, the judge simply went over the 3553A factors, didn't really expand on them, just listed them, and then the scheme had significant impact on multiple victims, and that was her reasoning. And he was dangerous to society, and he was unrepentant, are among the things, the reasons she gave for giving the sentence that she gave, wasn't it? Yes, that's true, but I think that the Isn't that part of what you consider under 3553A? It is what you consider under 3553A, but it's also what you consider under 2B1.1, and that's what we're talking about with the 18-point enhancement for the amount of money, that there's several victims. I think any kind of fraud or Ponzi scheme case, you're going to say that the person is dangerous, you're going to say that they put a lot of pressure on people to do it, usually, I think. So I think the factors that are in 2B1.1 fully cover the 3553A. In your view, then, there could never be a variance sentence for a fraud scheme like this? No, I don't think that's correct. I think if perhaps he had done this for a number of times and gotten caught, and he kept doing it again, so his criminal history was particularly bad, or if there were some kind of violations while, before this went to sentencing, if he had violated his supervised release, and that kind of thing, something that takes it out of the heartland. But I think as far as the heartland of these fraud cases, I think that they're all going to have, I mean, he's going to be, quote, dangerous, and he's going to have, whoever did it is going to put pressure on the people that he defrauded. I think that's going to happen in the majority of cases. There's nothing aggravating about the fraud that's really not covered in the guidelines. Like, for example, the amount of fraud, the number of people who were schemed, all that has been accounted for in the guidelines. Yes, Your Honor. So what you're arguing, I think, is that dangerousness is only subsumed in the very Yes, he's dangerous to commit a fraud. Otherwise, not a case where he brandished a weapon, or somehow he, beyond fraud, he intimidated someone, or that kind of thing. That's exactly right, Your Honor. And I'm aware of my time, if there's more questions. Well, you're always good when the court is still talking to you. Thank you. Thank you. All right. Ms. May Parker, come forward, please. May it please the court, good afternoon, Your Honors. What the district court did here was substantively reasonable. Let me start off by saying that this is the first time that I'm aware that counsel was making an argument about the court breaching the plea agreement. And it is our position that he is with that argument. He cannot, for the first time, raise an argument in the Court of Appeals at oral argument. But I would respond to it if the court wants me to do so. If not, I will move on to the argument that he did make, which is that the sentence here was substantively unreasonable. What the court had in front of it was a defendant who had purposely manipulated and defrauded his friends and family. He had done that through a period of aggressive behavior, as the court noted. And he had done it by instigating a plan, telling them that he was going to help them, in some cases, going after them for a year and a half so that they can invest in a scheme in the factoring business, which, in fact, was never a scheme other than a Ponzi scheme. He was never involved in any legitimate business. He used the monies from his victims to build a big house at the beach. He used the money to take fancy vacations, to drive luxury cars, and to fund the life that he imagined he was entitled to. And what the district court found was that he had preyed on those people, preyed on the people who trusted him, the people who were his friends and relatives, that he had victimized them, that he was persistent and aggressive in his scheme, that the impact of the crime was overwhelming. There were six victims who testified in the courtroom as to the impact of his scheme on their lives. But that doesn't make the crime an outlier, does it? You could say perhaps it's less heinous to go after your relatives and your friends than it is to someone who preys on just innocent public. I would disagree with the court on that. You don't think that the public is more threatened, endangered by people who just go after people randomly than people who just go after their family and friends? I think all of it is dangerous. I know all of them are, but in terms of we're talking about Venn diagramming, clearly a person who limits their crimes to their friends and relatives would be less dangerous than someone who has no limits. It's perfectly random strangers. How do you come to that logic? I disagree with the court because the friends and relatives are part of the community. They are part of the public. Maybe I'm not saying it correctly. Tell me how you conclude that a person who limits his or her crimes to their family and friends is more dangerous than someone who has everybody as their victims, public, random. Tell me that. How do you come to that logic? The defendant perpetrated his fraud by friends and relatives and people that he knew. So it was not limited to just friends and relatives. There were acquaintances and acquaintances. Okay, now still in the Venn diagram, that person who's everybody, randomly, the public. Now how are they more dangerous than the latter? He is just as dangerous. And as I said before to the court, he is just as dangerous. So you're equal, you're saying. He is a dangerous person is what I'm saying, and I don't think that you can say that if a person commits a crime. But the variances are for reasons to vary. Were there any enhancements given in this case? No, there were no enhancements. Okay, well, there are enhancements available, were there not? Since he was that, if it was an outlier, it was some aggravation, would be available, wouldn't it? Such as? I'm saying. He received enhancements for the number of victims. What I'm trying to get at is this. The purpose of the guideline sentencing was to try to give some, as best it could, national standards to fairness in sentencing, in terms of so that a person in Minnesota doesn't get six months and a person in New York City gets six years. That's the theory of it. Correct. Trying to be fully informed in the court. Correct. And a PSR. Correct. And then trying to give a balance. So I'm trying to say. And the variance is a reason why, after, to me, using the guidelines, which are enhancements and all those things, history and all those things, and then there are built-in departures that are also giving you guidelines. And then it seems like the variance is like, well, after using all of these tools, guidelines, enhancements, departures, 3553, now there's a reason for me now to vary from all of those, what I couldn't do through those tools. So I'm asking you, why in this case to vary? And you say it's because he preyed on his family. And, Fred, I'm not trying to give you a hard time. I'm just trying to see how is he more dangerous as an outlier because he preyed on family, friends, and acquaintances, versus a person who uses the public as their victims. Just a phone book. Randomly call numbers and say, hey, how are you at home? I got a Ponzi scheme. I'm going to defraud you. How is he more dangerous than that person? Okay. Let me answer the last question first. There was an issue of trust. When you know someone and you trust them, it makes it easier for that person, for you, to trust what they're saying to you. So in the grand scheme of things, if you are defrauding people who trust you, who have placed their trust in you, the emotional toll on that person is greater. Let me go back to something that the court said. The court said that you are supposed to look at all of the departures and all of that and then vary. That is not what the Fourth Circuit has said in Dios Dada Star. You don't have to look at the departure first. You can choose to vary. And that is what the district court did in this case. The district court did not discuss any departures, any traditional departures. The district court went directly to variances and varied based on the 3553A factors in this case. But isn't that, in a sense, undermining the whole idea of national sentencing when you do that? To vary instead of depart? No, to just jump to, not even use enhancements. For example, I appreciate what you said. Maybe this is a case where victims came in and said, Oh, I was his uncle, and I'm just distraught because he did this to me. And that may be a reason why you enhance because it's an over-the-top impact on victims. Enhancements have all of those things. You're the government. You know how you do it. It's like a Christmas tree. You can put ornaments on people and enhance them all the way down the line and put all kinds of things on them. You know those tools are there. But when you just go to variance, then the sky's the limit almost. Then you come here and say, What is substantive reasonableness? And the Supreme Court said it exists, but nobody's figured out what it means. So we don't really have to get to that if we start using the tools that are available. I thought the guidelines were meant to give. I think the district court used the tools that were available to her in this case because this court has said that you don't need to look at departures. You can go to a variance. And that is a tool that this court has given the district court, and the district court used it. I think the problem that many district courts have, and perhaps we're having, is that after De Soto Star, before De Soto Star was issued, but the guidelines were changed, and they were changed to adjust to a circuit split as to which there was some difference in the procedure used to arrive at a departure and then proceed to variance based on following Isseri and a whole host of other cases. And there's some question, A, about whether or not at this juncture De Soto Star still is valid. There is no indication that the guidelines were actually made known to or considered by the court in De Soto Star. They were promulgated so proximate to its decision. But there's another question I think I hear being asked, and that is into the guideline structure and in the way that guidelines are calculated, there are enhancements for vulnerable victims, and there are enhancements for breaches of positions of trust and that sort of thing as well. And isn't it also true, though, that there are some instances where the sentence that is produced by using those enhancements doesn't give you enough to lay the wood on the defendant the way he needs to be laid on because he has preyed on his vulnerable grandmother and that the courts are free to say, okay, I'm giving you a departure for a vulnerable victim and a departure for position of trust, but that's not enough, and I'm going to give you some more, and here's why I'm going to give you some more. You are a venal, dangerous person. You have no regret, and I'm going to do that. But if you're going to do that, you have to, A, go through the process, if you're going to be intellectually honest, of saying, okay, I'm going to look at whether or not the guideline structure allows you, produces enough of a penalty if I apply those kinds of enhancements and then articulate why you're going behind it, and the defendant's argument is that sort of didn't happen here, I think. What do you think about all that? The record doesn't bear that out because, first of all, in calculating the guideline range, the court is directly in the guidelines, and the court is looking at the enhancements that apply, and the court did that here. The court calculated the guidelines and looked at what enhancements would have applied. What the court said in this case is that the guideline range that was derived after the calculation of the guidelines was not sufficient for the sentence that this defendant deserved. Therefore, the court went to looking at the 3553A factors and arrived at a sentence that it thought was sufficient to serve those factors. Which one of those factors brought it up out of the guideline range? The court did not specify which one of the factors, but it did emphasize, for example, that it's lack of respect for the law. That's one of the factors. That's one of the factors. The court also talked about the nature of the offense, that the court wanted to deter this type of criminal conduct. Can I ask you a question about the first one? Yes. Everyone who's found guilty of a federal crime, criminals, don't they show a lack of respect for the law? To some degree, yes. Yeah, I just thought that would be applied all the time. To some degree, but certainly in some cases there is more of a lack of respect for the law. That's why at the moment there are more counts in their indictment, right? There were 20 here. Right. That's why the guidelines account for that. More counts, you know, in terms of you put them together. That's factored in. I don't think whenever the court does a variance, the court is factoring in the degree to which the defendant has done certain things. And what the court was looking at in this case, in this case in particular, the defendant had been in bankruptcy proceedings, and it was brought to the attention of the district court that he absolutely refused to cooperate with the bankruptcy judge. And so that these victims were being victimized all over again, and the court noted that specifically. And when it talked about the lack of respect for the law, it mentioned you have been in bankruptcy proceedings and you have not cooperated. You showed no remorse for your victims. The victims testified that he had not as much as apologized to them for what he had done. At the point of sentencing, he had refused to even, that bankruptcy proceedings had not gotten any cooperation from the defendant at the time of his sentencing in this criminal case. So I don't think that the guidelines, as it was calculated here, had taken that particular factor into consideration, and the district court did. Well, did he have funds that you knew of someplace that could be forfeited for the benefit of the victims? Well, he was forced into bankruptcy, and the house that he had built, part of it was sold, it was sold, and some of the proceeds were in the bankruptcy. Yeah, but you said that's a little interesting where he didn't cooperate. Well, if there were assets that were available, then the government should have pursued them. Yes, but because the bankruptcy proceedings preceded the criminal case, then restitution would be something that comes after the bankruptcy in terms of whatever funds were available. He was forced into bankruptcy. So the bankruptcy took it all first. That's even more problematic now. He's punished for exercising his rights in a separate civil action where he has right to counsel and the right to use all kinds of tools. Is he now stripped of all of his rights in terms of prosecuting and defending a civil case because he has this case? I'm not sure I understand your question. What I'm saying is that he's being punished, perhaps, because he's using legal tools in a separate civil action, not to the pleasure of the district court judge in the criminal case. You follow what I'm saying? I think I understand what you're saying. If you are bankrupt, there are certain procedures as a bankrupt that you have, correct? This was not a voluntary bankruptcy by the defendant. It makes a difference. It does? It does. So he has no rights. The defendant was supposed to cooperate with the bankruptcy judge and the bankruptcy proceedings. He was forced into bankruptcy. But then the U.S. trustee has all kinds of tools, including contempt of duty. And he was using those, and part of it was to try to get him to cooperate, and he refused to. So then the court here is going to sentence him because of that. No, the court didn't sentence him because of that. You brought it up, counsel. But the court, you asked me the question of why was it that he was considered to be disrespectful of the law, and I told you one of the things that the court considered was that. Also in the record is the issue that even after the defendant had started to be, when they started to investigate him, he continued to get more victims to be a part of his scheme. So he didn't cease and desist, even when he knew he was under investigation in this case. After he was arrested? After the investigation started and he had been told that he was under investigation, he continued his scheme and continued to get others to join. Which shows disrespect for the law. It absolutely does. Is that your point? Yes, Your Honor. Because you investigated it? I'm sorry? Because the government investigated it? Yes. The law has knocked on his door and has told him that you are being investigated. He knew he was perpetrating a scheme, and rather than stop perpetrating the scheme, he continued. I think that shows disrespect. This is still America. Just because you're an executive branch and you come investigate it doesn't mean that you can tell a person what the law is on their own activities. That's why we have courts. That's rather interesting that you say that just because you come, that's why we have a rule of law. Right. It's not just because they came. It's the fact that he was running a Ponzi scheme and he continued. It might be, but it's not because they've come there knocking on his door. That knock may just be as errant as anybody else's knock. Yes, but if you were running a Ponzi scheme, that might be a time to stop. Maybe if you didn't believe it was a Ponzi scheme and you thought it was correct. He knew it was a Ponzi scheme. The record is clear that this was a Ponzi scheme. The theory of law and criminal is very important to me, but I thought it was interesting you said that because you knock on their door, that means all of a sudden that's the law. That's what we have courts for, not for the executive branch in terms of people who enforce the law. You agree with that, don't you? Yes. You agree with that? Yes. Your investigation does not make it the law. Your investigation is what it is. You're looking into something that you might pursue in a court of law. The investigation is an attempt to enforce the law. Right, but it's not. We still live in a nation of freedoms and a rule of law. Okay, all right. If there are no further questions, my time is up. I ask you to affirm the judgment of the district court. Do you have anything further? Very briefly. I don't want to be redundant, so I'm just going to clean up a couple things. As far as the bankruptcy, as the court alluded to, and as is in the record, under advice of counsel, Mr. Whitley did not cooperate. As you said, that's his right. I thought he had. He's talked between different counsel. No, go ahead. And secondly, the record does show that Mr. Whitley did apologize at the sentencing hearing, and he had apologized to a few of the victims beforehand, according to the record. So I just wanted to clean that up, and if there's no other questions. I just want to ask you a question. You haven't covered as much as you've seen me. Why do you think this sentence was substantively unreasonable? I think it was substantively unreasonable because the guideline factors factor in all the relevant material in this case. It's in the heartland of cases, I would argue, and the guidelines take the amount of loss, they take the victims, and that's why I think it's substantively unreasonable. Well, you think the only factors to be considered in the case, then, are the amount of the loss and the number of victims. That's the predicate of your argument on sentence. Under the guidelines, that's correct, but then I think that things like him being dangerous, as we've discussed before, I think that anyone who does these fraud things, I think they're all considered dangerous if you're going to consider him dangerous. There's no elements of threat or anything in this. There are plenty of people, aren't there, who commit frauds, and they are intentional frauds, but they're not widespread. They're not perpetrated by persistently chasing people, or they're perpetrated by people who truly show remorse by trying to do something about it. Aren't there those kinds of frauds, too? There are. There are. Isn't somebody who does it one way more dangerous to society than somebody who does it in the least and in a less aggressive, nasty way? Don't you think, or do you think? Well, I'd agree with that, but I think that most people who do these kind of things that the federal government's investigating and that gets the federal government charges, I think that these are more widespread things, so it's in the heartland of the cases as far as when you're looking at the federal sentencing guidelines. Thank you, Your Honors. Ms. Halls, I note that you have been court appointed. I just want to say on behalf of the court, we thank you so much for your services. We couldn't do our job without your help, and we really appreciate that. And likewise to Ms. May Parker, you have ably represented the United States government. We thank you very much. We'll come down and greet counsel and proceed to our last case. Thank you, Your Honor.
judges: Diana Gribbon Motz, Roger L. Gregory, Barbara Milano Keenan, Roger L. Gregory, Barbara Milano Ke